UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

LAURA GRANT,

    Plaintiff,

v.                                                                                    ACTION NO. 4:12cv191

CAROLYN W. COLVIN,
Acting Commissioner, Social Security Administration,

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") that partially denied Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference, dated May 13, 2013. This Court recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL BACKGROUND

The plaintiff, Laura Grant ("Ms. Grant" or "Plaintiff"), originally filed an application for DIB on January 24, 2007 alleging she had been disabled since April 25, 2006. R. 48.[1] Her application was denied, both initially on April 25, 2007, and upon reconsideration on July 23,

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

2007. Id. At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") took place on February 19, 2009, and an impartial vocational expert testified. Id. On June 4, 2009, ALJ Vest issued a decision finding Plaintiff had the severe impairments of right carpal tunnel syndrome, cervical radiculopathy, stenosis and lumbrosacral radiculopathy at step two, but ultimately finding Plaintiff had a modified sedentary residual functional capacity ("RFC"), and denying the Plaintiff's claim. R. 48-57. The Appeals Counsel denied a request to review that decision on January 26, 2010, making the ALJ's decision the Commissioner's final decision. R. 58-60.

At issue in this case, Plaintiff filed a subsequent disability claim on August 3, 2009, alleging disability from June 3, 2009. R. 12, 157-65. The application stemmed from "upper neck problems," "numbing in [the] hands," and "lower spine problems." R. 193. The Commissioner denied Plaintiff's application, both initially on February 19, 2010 (R. 93-105), and upon reconsideration on October 5, 2010 (R. 112-118).

At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") took place on August 11, 2011, at which the Plaintiff and an impartial vocational expert testified. R. 28-44. At the hearing, Plaintiff amended her alleged onset date to February 26, 2010. R. 36. On September 2, 2011, ALJ Jordan issued a decision partially granting Plaintiff's claim finding her disabled as of January 12, 2011, her fiftieth birthday. R. 12-22. Plaintiff appealed the partial denial of benefits on November 1, 2011. On October 16, 2012, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the Commissioner's final decision. R. 1-3.

Having exhausted all administrative remedies, Plaintiff filed a complaint with this Court on December 19, 2012. ECF No. 1. Defendant filed an Answer to the Complaint on February

21, 2013. ECF No. 5. On May 16, 2013, an Order was entered directing the parties to file Motions for Summary Judgment. ECF No. 8. Plaintiff's Motion for Summary Judgment was submitted on June 17, 2013. ECF No. 9. Defendant Commissioner's Motion for Summary Judgment was filed on July 17, 2013. ECF No. 11. On August 1, 2013, Plaintiff filed her Reply Brief. ECF No. 13. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for a decision based on the memoranda.

## II. FACTUAL BACKGROUND

Plaintiff was born on January 13, 1961, and was fifty years old at the time of the ALJ's decision. R. 15, 36. Plaintiff has worked as a baker, a produce clerk, and a produce manager. R. 194. Plaintiff filed her application for DIB on August 3, 2009, alleging disability as of July 29, 2008, due to neck and spine problems, and numbness in the hands. R. 157-65. Plaintiff meets the insured status requirements of the SSA through June 30, 2011. R. 15.

Plaintiff had a bilateral upper extremity EMG performed on July 14, 2009, because she reported increased pain and numbness in her neck and shoulders. R. 272. The examination revealed new problems of mild carpal tunnel on the right, chronic neck pain, and bilateral cervical radiculopathy, in addition to the previously assessed problems of left arm pain, hand numbness, and disturbance of skin sensation, all of which had deteriorated. R. 273. The examination revealed that while Plaintiff had no carpal tunnel on the left, she was positive for cervical radiculopathy at C6. *Id.* On July 30, 2009, Plaintiff underwent an MRI of her cervical spine. R. 341. Compared to an MRI taken on August 5, 2008, there was "no significant change in neural foraminal stenosis greatest at the C5-6 and C6-7 level." R. 342. Plaintiff underwent an MRI of her lumbar spine on November 5, 2009, which showed a "slight increase of a right

paracentral L5-S1 disk protrusion which may contact the traversing tight S1 nerve root," as compared to an August 5, 2008 MRI. R. 339-40. Plaintiff underwent three epidural steroid injections, on November 30, 2009, December 21, 2009, and February 9, 2010. R. 309-16.

At a follow-up appointment on February 16, 2010, Bonner, P.A.C., opined that Plaintiff had knee pain, as well as general pain from her other ailments, and stated that she had difficulty with some activities of daily living, including "reaching up into cabinets" and "stooping," due to her spinal problems. R. 421. Plaintiff attended physical therapy for her lumbar and cervical spine problems, from February 26, 2010, to April 26, 2010. R. 355-75. In her initial evaluation on February 26, 2010, Nicole Muenster, P.T., opined that Plaintiff's strength was 4/5 in her left lower extremity, 3+/5 in her right hip flexion, 3/5 in her right knee flexion and extension, and 4/5 in her right ankle dorsiflexion and plantar flexion. R. 362. She also found that Plaintiff's range of motion was limited, to 50% and painful in lumbar flexion, lumbar extension, lumbar right-side bending, lumbar bilateral rotation, cervical left-side bending, and cervical bilateral rotation; 25% and painful in cervical extension; and 75% and painful in lumbar left-side bending and cervical right-side bending. Plaintiff attended physical therapy for twelve sessions. R. 365-75.

On February 19, 2010, Plaintiff's case was reviewed by a state agency physician, who found her to have the capacity to frequently lift 10 pounds; stand or walk for up to two hours and sit for six hours in an eight-hour workday; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and never climb ladders, ropes, or scaffolds. R. 65-66. The state agency physician found that Plaintiff should be limited to sedentary work. R. 67-68. On July 19, 2010, Paul E. Savas, M.D., suggested that Plaintiff could return to light work, citing an April 2010 FCE recommendation. R. 455.

On July 28, 2010, Plaintiff sought treatment at Walter Reed Primary for knee swelling

4

and knee pain, which developed one month prior to the visit. R. 377. Plaintiff's records opined that Plaintiff "puts a lot of weight on her knees and since last one month has seen on and off worsening of bilateral knee pain and swelling." R. 377. The physical examination revealed that Plaintiff's upper and lower extremities had normal range of motion, no cyanosis, no edema, and normal pulses, and that her neck had normal range of motion and her cervical spine was nontender. R. 378. Additionally, Plaintiff showed no focal motor deficits and a normal gait. *Id*. Radiological examinations performed by Valentine Curran, M.D., revealed impressions of mild osteoarthritis in the right knee and moderate patellofemoral osteoarthritis in the left knee, in addition to degenerative disc disease in the lumbar spine. R. 379, 386-87. Plaintiff's final diagnosis from this visit was lumbar back pain, prepatellar bursitis, and degenerative joint disease. R. 381. The paperwork from the visit was signed by Sudershan Gupta, M.D. R. 384.

### B. Plaintiff's Statement and Hearing Testimony

At the ALJ hearing, Plaintiff testified that since the last hearing before an ALJ, her medical problems had worsened. R. 32. She stated that in addition to pain in her neck and knees, she was having cardiac problems, for which she would soon be receiving a cardiac catheterization. *Id*. She also stated that she had constant shooting pains down her neck, back, legs and knees, and that the epidural steroid injections she had received were ineffective at stopping the pain. R. 32-33. She reported that she did not have the money to seek further epidural steroid injections, and that since her insurance ended, she sought treatment through a free clinic. R. 33-34. Regarding her worsening of symptoms, Plaintiff stated that she could no longer open doors because of her hands, and that she could not mop or vacuum. R. 35. She testified that she has difficulty sleeping, and spends most days in a recliner. *Id*. Regarding her living situation, Plaintiff reported that she lives with her mother-in-law and her son, and that she

drives very seldom because pain medications make her feel "weird driving." R. 37-38.

In response to questions from the ALJ, Plaintiff testified that she can sit for approximately thirty minutes before she must stand, and that she can stand upright for twenty minutes, but she cannot stand still in one place. R. 39. She also reported that she can walk for fifteen minutes or less than 100 feet, before she must stop due to shortness of breath, and that she cannot carry anything over her head but she has been trying to lift five-pound weights with her arms. R. 40.

Vocational Expert ("VE"), Linda Augins, testified at the hearing. She classified Plaintiff's past relevant work as a bakery and deli worker as unskilled and light, and produce manager as skilled and light based on the DOT, but as performed, it was likely skilled and medium because Plaintiff had to load and unload trucks. The VE stated that Plaintiff had no transferrable job skills from her previous employment. R. 41. Additionally, the VE stated that an individual of Plaintiff's age, education and work background, with a similar RFC, should be able to perform unskilled sedentary work such as charge account clerk, laundry pricing clerk, and surveillance system monitor. R. 40-43.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2011); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

*Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Perales*, 402 U.S. at 390; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. *Coffman,* 829 F.2d at 517.

### IV. ANALYSIS

To qualify for a period of disability and DIB under section 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a) (2012); *see also* 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2012). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

In evaluating disability claims, the regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents her from past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability. This analysis is set forth in 20 C.F.R. § 404.1520.

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." *Schnetzler v. Astrue*, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. *Hays*, 907 F.2d at 1456.

### A. ALJ's Decision

In this case, the ALJ found the following regarding Plaintiff's condition. First, Plaintiff last met the insured status requirements of the Act on June 30, 2011, and that Plaintiff did not

engage in substantial gainful activity during the period from her alleged onset of disability on February 26, 2010, through her date lasted insured. R. 15. Second, through her date last insured, Plaintiff's back disorders status post fusion, right carpal tunnel syndrome, and knee disorders constituted severe impairments. R. 15. Third, through her date last insured, Plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16. Between Steps three and four, the ALJ determined that through her date last insured, Plaintiff has the RFC to perform the sedentary work as defined in 20 CFR 404.1567(a), except that Plaintiff can lift, carry, push or pull up to 10 pounds occasionally; must avoid overhead lifting, carrying, pushing or pulling; can stand and/or walk for approximately two hours and sit for six hours in an eight-hour workday if she is allowed to alternate sitting and standing periodically; should avoid climbing but can perform other postural movements occasionally; and retains the ability to perform simple, routine work activities that involve low stress tasks. R. 16. Fourth, Plaintiff was incapable, at her date last insured, of performing any of her past relevant work. R. 19. Fifth, considering claimant's age, education, work experience, and RFC, there existed jobs in the national economy in significant numbers that Plaintiff could have performed prior to January 12, 2011. R. 19-20. However, after that date, Plaintiff's age category changed such that there were no jobs in the national economy that someone of Plaintiff's age, education, work experience, and RFC could perform. R. 21. These findings led the ALJ to conclude Plaintiff was not under a disability between the alleged onset date of February 26, 2010 through January 12, 2011, but that Plaintiff became disabled as of January 12, 2011 and has remained disabled through the date of the ALJ's decision. R. 21.

In her Brief in Support of her Motion for Summary Judgment, Plaintiff alleges the ALJ

("ALJ Jordan") made one error in this case. ECF No. 10. Plaintiff alleges that the ALJ erred by not finding that Plaintiff had a more restrictive RFC than she did in her previous hearing, because there was medical proof of Plaintiff's physical worsening at the second hearing.[2] *Id.* at 1. Plaintiff alleges that this led to legal error, as the ALJ's determination of Plaintiff's RFC directly affects his determination of disability; Plaintiff insinuates that because the prior ALJ's ("ALJ Vest") RFC determination was for sedentary work, "any further erosion of it may be outcome-determinative for disability." In reviewing the parties' briefs, this Court finds that the ALJ's determination was not an error of law, and therefore recommends that the decision of the Commissioner be AFFIRMED.

### C. ALJ Jordan's RFC Determination

Plaintiff mischaracterizes the conclusions to be drawn from the line of cases including *Lively w. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987), *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999), and Social Security Acquiescence Ruling 00-1(4). *Lively* addressed the claim of an individual who had been previously given an RFC that allowed him to perform light work. *Lively*, 820 F.2d at 1391. Several weeks after that assessment, Lively turned fifty-five, which qualified him as an individual of advanced age. *Id.* at 1392. Lively filed a second application for benefits incorporating this new information, and the second ALJ found him not disabled, with an RFC to perform work on any exertional level. *Id.* The Fourth Circuit remanded the case, because "[i]t is utterly inconceivable that his condition had so improved in two weeks as to enable him to

---

[2] Plaintiff's brief also briefly touches on a claim that ALJ Jordan's RFC is less restrictive than ALJ Vest's because ALJ Jordan describes Plaintiff's ability to stand and sit during a workday as "periodic," and ALJ Vest describes her ability to stand and sit as "at will." Defendant rightfully points out that the question ALJ Jordan asked to the VE at the second hearing referred to Plaintiff's ability to stand and sit as "at will," and presumably the VE formulated her assessment in response to the "at will" rather than "periodic" designation. R. 41. Thus, the semantic distinction between the two terms is so negligible as to be non-cognizable under *Albright* and AR 00-1(4), discussed below, and the Court finds that ALJ Jordan's finding of "periodic" ability to sit and stand is harmless error.

perform medium work." *Id*. The Fourth Circuit then determined that the Secretary had the burden to demonstrate that a plaintiff's claim had improved sufficiently to find a higher RFC upon second application. *Id*.

*Albright* expanded on and modified *res judicata* in the Fourth Circuit. Post-*Lively*, the Social Security Administration promulgated Acquiescence Ruling 94-2(4), which, in pertinent part, stated that ALJs must adopt prior rulings that determined "whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence related to such a finding." *Albright*, 174 F.3d at 474-75, *quoting* AR 94-2(4). In *Albright*, the Fourth Circuit found that the Social Security Administration was too broadly interpreting the *res judicata* effects of *Lively* by erecting an absolute bar to reevaluation of evidence, because it placed the burden on the claimant to produce "new and material" evidence, and created an "exception to the general rule that separate claims are to be considered separately." *Albright*, 174 F.3d at 476. The Court held instead that "*Lively* is . . . best understood as a practical illustration of the substantial evidence rule," *Id*. at 477, and that the Social Security Administration's "treatment of later-filed applications as separate claims is eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition." *Id.* at 476. The Fourth Circuit also found, however, that a prior RFC determination was "highly probative" of one's continuing condition for a period mere weeks later, as in *Lively*, though would be less probative as time progressed. *Id*. at 477.

In 2000, the Social Security Administration released Acquiescence Ruling 00-1(4), interpreting *Lively* and *Albright*. AR 00-1(4) created a multifactor test in order to adjudicate whether to consider a prior finding as evidence. ALJs should look to "(1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact

11

relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." AR 00-1(4). An ALJ does not necessarily have to walk through each factor in order to comply with AR 00-1(4); rather, reviewing and evaluating all the evidence presented at the correct standard complies with the acquiescence ruling. *See Melvin v. Astrue*, 602 F. Supp. 2d 694, 702 (E.D.N.C. 2009) ("Although the ALJ did not specifically refer to AR 00-1(4) . . . or explain the precise weight he gave to the [prior ALJ's findings], the ALJ did *consider* the prior ALJ's findings as part of reviewing the record. . . . In doing so, the ALJ complied with AR 00-1(4). The ALJ also complied with *Lively* and *Albright*."); *see also Nicholson v. Commissioner of Social Security Administration*, 600 F. Supp. 2d 740, 749 (N.D. W. Va. 2009) ("The ALJ's review of all of the medical evidence of record, including the records from the previously adjudicated period, demonstrates that he understood and complied with the factors outlined in AR 00-1(4).").

In this case, ALJ Jordan directly discussed the impact of *Lively*, *Albright*, and AR 00-1(4) on his evaluation of the case. R. 12-13. He acknowledged that as an ALJ, he must consider previous findings as evidence, and give it appropriate weight in his adjudication. R. 13. Additionally, he made it clear that "[t]he findings from the prior decision have been considered as required," but that "new evidence, in conjunction with the passage of time, warrants . . . changes in the findings." R. 13. Based on these statements, the Court finds that there is substantial evidence to show that ALJ Jordan fulfilled what was required of him under AR 00-

1(4), *Lively*, and *Albright*, to consider the prior ALJ's decision as evidence.[3]

Plaintiff argues that because ALJ Jordan gave Plaintiff a functionally similar RFC, despite finding another severe impairment at step two, ALJ Jordan made his RFC determination improperly. However, while the argument Plaintiff makes looks logical on its face, it does not square with Fourth Circuit precedent. Plaintiff argues that *Lively*, *Albright*, and AR 00-1(4) dictate that "an RFC finding must result from one of the following three situations: 1) The prior ALJ RFC finding shall remain the same in a subsequent claim if the new evidence shows there has been no change for better or for worse. 2) The prior ALJ RFC finding shall become less restrictive in a subsequent claim if the new evidence shows there has been medical improvement. 3) The prior ALJ RFC finding shall become more restrictive in a subsequent claim if the new evidence shows there has been medical worsening."[4] Pl.'s Br. In Supp. of Mot. for Summ. J. 5, ECF No. 10. This looks logical, but is simply incorrect.

An ALJ could find medical worsening or a new severe condition at step two, and still be able to assess a functionally equivalent RFC, if the medical worsening does not alter that individual's functional ability. For instance, in this case, ALJ Jordan found that Plaintiff suffered from the additional severe condition at step two of knee disorders. However, when determining Plaintiff's RFC, ALJ Jordan found persuasive Dr. Savas' assessment that Plaintiff's knee conditions would allow her to perform light duty. R. 18. There is substantial evidence in

---

[3] Plaintiff also argues that ALJ Jordan found fewer conditions met the level of a "severe" medical impairment without substantial evidence in the record to find that the omitted conditions had improved, and thus runs afoul of AR 00-1(4)'s requirement for *res judicata* determinations. Specifically, Plaintiff argues that ALJ Jordan ignored Plaintiff's cervical radiculopathy and stenosis, both of which were deemed "severe" by ALJ Vest. Pl.'s Br. In Supp. of Mot. for Summ. J. 9, ECF No. 10. In reaching that conclusion, Plaintiff compares the conditions deemed severe by ALJ Vest and those deemed severe by ALJ Jordan. *Id*. Plaintiff mistakenly equates ALJ Jordan's finding of "back disorders status post fusion" only to ALJ Vest's "lumbosacral radiculopathy status post fusion." In Plaintiff's case, however, lumbosacral radiculopathy, cervical radiculopathy, and stenosis all fall under the category of "back disorders." Thus, there is substantial evidence that ALJ Jordan's assessment of "back disorders status post fusion" refers to all three back disorders that ALJ Vest found in his decision. ALJ Jordan did not ignore the previously-adjudicated severe conditions; he merely combined them into a single category of "back disorders."

[4] In Plaintiff's Reply Brief, this same list is described as a "helpful shorthand," rather than an absolute necessity. Reply Br. 3, ECF No. 13.

the record that ALJ Jordan considered Plaintiff's knee condition, and found it to contribute only to an overall assessment of a sedentary RFC. ALJs are required to look at the whole record and the whole person when determining RFCs; there is not simply a calculation that if there are more serious impairments, the RFC will be more restrictive, as Plaintiff suggests. Based on ALJ Jordan's findings, there is substantial evidence that he considered all of Plaintiff's conditions individually, and determined an RFC based on thoughtful consideration of Plaintiff as a whole person. Following from that, there is substantial evidence that ALJ Jordan assessed all of Plaintiff's conditions and reached the conclusion that Plaintiff had a sedentary RFC, even if it contained similar restrictions to the sedentary RFC assessed by ALJ Vest. Therefore, the Court RECOMMENDS that the decision of the Commissioner be upheld.

## V. RECOMMENDATION

Based on the foregoing analysis, it is the recommendation of this court that Plaintiff's Motion for Summary Judgment (ECF No. 9) be DENIED. The Court further recommends that Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party=s objection within fourteen (14) days after being served with

a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).

/s/
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
January 31, 2014